I would like two minutes for rebuttal, Your Honor. Okay. Good morning, Your Honors. I am Yee Ling Poon, attorney for the petitioner, Ms. Zhao. With me here today, again, is my co-counsel, Deborah Niedermeyer. May it please the Court, this case began in 2002. Ms. Niedermeyer and I were here last before this Court in June 2005. We are back again because after 11 years, the agency still can't get it right. Ms. Zhao, a college-educated single woman who refused to submit to a humiliating, degrading, and dangerously unsanitary quarterly virginity inspection, was punished with a fine and threatened with further punishment via forcible IUD insertion if she missed another inspection. Now, the last time you were here, ma'am, if I could, and I apologize for interrupting, but I just want to make sure, the last time you were here, you were here, and we were arguing whether there was past persecution, and that's already decided, correct? So we're really only dealing with the fear of future persecution. Correct. And the past persecution is a settled issue. There's no past persecution. Correct. I just wanted to make sure. So we have no presumption here. You've got to establish the fear of future persecution, and that's got to be an objective fear, correct? Yes. All right. So the credibility of Ms. Zhao and the facts were already established long ago. She was found credible. In 2005, this Court issued a limited remand instructing the BIA to apply two cases. Lee and Chen. Right. Instead of following this Court's instructions, the BIA violated both the letter and the spirit of the mandate, sending the case back to the IJ for additional fact findings, and demanded additional corroborating evidence for testimony already found credible. Well, that's different than the issue of whether she had a subjective fear. Even assuming that she subjectively feared persecution if she returned back to her country, the IJ was tasked with the responsibility of determining whether that fear was objectively reasonable. Correct. So why was it not appropriate under that circumstance for the IJ to say, in order to determine whether her fear is objectively reasonable, I'm going to need to look at some additional evidence? There is actually, even in the initial hearing, objective evidence of that fear because she presented a document notifying her to show up for the inspection. And then when she failed to show up, the family was fined, imposed a fine, and she was also notified that she would be forced to subject to an IUD insurgency if she failed the second time. That document was never found to be anything but genuine. So I think the V-man is something that is only three years different from the time when she was notified for that inspection to the V-man of the BIA. There's no indication there was any change at all offered by the government. So I think the V-man at that time — Is there any law prohibiting the IJ from asking for updated country conditions to see if the situation has changed in her province since the time she last appeared before the IJ? No law against it. In fact, the court here has held, in general, that if the record is stale, very stale, and it's appropriate to V-man sometimes for the record to be actually revealed. However, under the scenario here, when there were the — the Respondent was fined to be credible, including testimony to her subjective as well as the objective fear. The issue at that time, the mandate was only to apply Lee and — and Chan. The final — based on the facts of the case and the case law that intervening time, there was a present issue, whether that the facts of her case actually fall under the two cases in terms of whether what constitutes prosecution and what constitutes resistance. The court did not V-man to update it. Yet, every three years, we have a — this is a normal course for a case to go through from individual hearing to a circuit court. If every three years you ask for V-man, then every time there's a V-man for a country condition, there would be no end to any of these proceedings at all. Well, but just a minute. It seems to me that what happened, and I read the decision pretty carefully, that it was remanded for a determination in light of Lee and Chan, but the bottom line was whether your client had a well-founded fear of persecution — of future persecution. That was what they were supposed to determine, correct? Yes. And to apply Lee and Chan to the conditions that were applicable to her and see if they changed what there was as it related to that, correct? Yes. Let me answer this question. But my worry, then, is let's look at what the evidence is, because what is my standard of review on appeal now? Substantial evidence, Your Honor. All right. And as I understand it, what they said was that she was unable to show that she would be subject to the IUD or the forced gynecological examinations, and therefore she was unable to show that she had an objective fear. Well, let me put it this way. Isn't that what they said? Yes. And there are two — three things here. The agency is not — when somebody's testimony is found credible, this is a pre-real IDF case, so corroborating evidence is not required. And even if corroborating can be required, it has to be reasonably available. What we're saying here is that we have the evidence to show that she had been told to go before she left China, and there's no evidence to say that this is not ongoing. Well, but my worry about that is this. Ms. Poon, the problem that I have is that I'm having a tough time with your argument. I don't think that admitting country conditions undermines credibility at all. She has credibility, and they give her — they give her testimony credence as to the things — questions of fact which she would have knowledge about. But the country conditions are simply to say, these are the country conditions as they exist now. And that's — so I didn't see how the credibility was undermined at all. To the facts that she could know or that she knew about, they could give her credence. But to the country conditions, they give other facts upon which they could make their determination. And, given all of that, now we're back to substantial evidence review. So you can argue one way, give her credence — give credence to her testimony and go for her. Or you can go the other way, and it's absolutely certain that she's unable to show she would be subject to this IUD or the forced gynecological examination. Easy for me to say. No. And so, therefore — and the country conditions back that up. And so, therefore, substantial evidence means the BIA decision must be — must be sustained. I beg to differ, Your Honor. Oh, that's what I want you to talk to me about. That's why I wanted to explain it to you. First of all, there's a document there. They already established that she will be subjected to that in 2002. Okay? And that's why she ran away from it. And there's no country condition report or any background information to say that the practice has stopped. What the judge wants is to show something affirmatively that this practice continues. Whereas what we're saying is there's no evidence to show that this practice has stopped. So in ending our — Well, but it seemed — but it seemed to me that, given the country conditions, the requirement of documentary evidence to show future persecution is still relevant. But is there any evidence submitted by the government or the IJ to show that this practice has stopped? None. There isn't. You go through the whole certified record, and the only document the IJ was able to come forward is the loosening of the marriage law by not requiring people to have a premarital checkup. That was the only one. And then there is a State Department report when the judge asked for guidance. The State Department said that we are not aware of this kind of inspection. However, we cannot rule it out. They also said the document you show us for review, we cannot — that nothing indicates it's fraudulent. So — and that's why it's possible this thing goes on in various villages. And that is the last word of the document. I'm interested in your argument because you don't say anything about Li and Chen. Do you agree that Li and Chen were properly distinguished? No, not at all. Because — Why not? Li and Chen stands for two issues. The judge ruled on what constitutes resistance, and all what constitutes persecution. And it's not a matter of whether the person has gone through past or future persecution, or it doesn't really matter whether the person is married, single, or married, or whether with children. That was not the issue at all. Those are the facts. But the essence of the whole thing is what constitutes resistance, what are persecution. Those are the two issues that we asked the BIA's expertise to apply the facts of our case to those two cases. They distinguished on some facts, but they never addressed the two crucial issues that was in the case. Thank you very much. Your time has expired. Thank you. Good morning. May it please the Court. My name is Julia Jones, and I represent the Attorney General of the United States. What this case is about is about the burden of proof. And as we are familiar with asylum law, a petitioner has the burden of proof. And particularly this case is about the burden of proof with regard to the burden of production or the sufficiency of evidence. And here, the Board was very reasonable. I think there's a little bit of confusion with regards to whether or not the Board was requiring corroborating evidence, or whether requiring sufficient evidence to establish that she had a well-founded, objectively reasonable fear. And there are two distinct separate cases that need to be distinguished here. With the Board, what's required to establish a well-founded fear, you have to provide an objectively specific documentary evidence to establish that your fear is well-founded and objectively reasonable. The document that we have from before in 2002 is a document that is entitled, excuse me, the Health Examination for Unmarried Female Youth and Married Women Without Children. And that's at 1045. In 2006, after the remand, what this Court specifically stated is that based upon those two cases, she may, and they use the word may, have a well-founded fear. It was very reasonable for the Board to require that in 2006, she establish whether or not that fear is well-founded, given the fact that if you look at this document, the document is limited in its scope. And it's saying that the time that it, for this gynecological checkups, and I have a hard time saying that as well, is between, it's a 15-day period. And if you don't comply within that 15-day period, there's a fine. And then there's evidence in the record that the fine was paid. So the question of the matter is, back to Petitioner in 2006, is do you have an objectively reasonable, well-founded fear if you return to China based upon your claim that you're going to be forced to undergo this gynecological checkup? And she failed to do so. And that — Well, you have to consider the documentary evidence that she submitted in 2002, in conjunction with her testimony, which was deemed to be credible. So she was ordered to show up for the gynecological exam. She failed to do that. Her parents paid a fine. They were warned that if she failed to show up, that there would be further fines or consequences. I forget exactly what the warning entailed. Right. And so I agree with you that it was reasonable for the IJ then to seek additional — give her an opportunity to submit additional documentation and also to request additional documentation regarding changed country conditions. But the report that came back didn't rule out the possibility that individual villages could still be administering policies that may differ from what the provincial government required. So how do you address those particular gaps in the changed country conditions report? Well, she's actually in a — I wouldn't say lucky position, but most often than not, State Department reports contradict what someone's saying. The State Department report was saying, look, we don't know. From what we know, it doesn't exist. We don't know. The door is open for her for four years to provide information to say, yes, this practice is still ongoing. It could have been an affidavit. It could have been it. It could have been anything to establish. Because, again, we can see credibility is not an issue. We're not saying these documents are fraudulent. What we're saying is the document is limited to 2002. What we're saying is her testimony is limited to 2002. In 2006, she didn't testify. And in 2006, the only documents they provided on remand dealt with the one-child policy, which has nothing to do with her for the fact of the matter that at that time in her affidavit, she stated, I'm unmarried and I'm childless. So with that information and that evidence that's provided, the immigration judge was left with nothing else but to say, this is all I have, and you haven't met your burden of proof. You haven't met your burden of production to establish that your fear, that you're going to be persecuted, is well-founded and objectively reasonable. Where would she get that information? How would she get that information? Because they're talking about a remote village there somewhere in China, and the State Department says they don't know. Now, how is she going to get it? She could have contacted family members that still remain in the village. We've got a number of cases where individuals are able to provide that information. Or she could provide an affidavit of someone that she knew that has gone through this in more recent times than in 2002. But the fact of the matter of this notice that she provided, it does give a limited time period for the checkup. It's a 15-day window. And if you don't comply within a 15-day window, you're fine. And she provided proof that her family was fine. That we're not contesting. What we're contesting is in 2006, post-Li and Chen, is your fear of future persecution well-founded because you're not giving the presumption because you can't establish past persecution. So you have the burden to come forward and establish that in 2006, your fear is well-founded and objectively reasonable. And again, she was given an opportunity in light of the State Department report that wasn't contradicting it, and she provided no evidence to the contrary. Counselor, I'm going to have you think outside the box here just a little bit. You have to understand that this is a particularly sympathetic case. I agree. Especially in China. I agree. Particularly sympathetic, particularly nervous because she has stuff in the record for 2002. She comes up with this report which doesn't necessarily confirm or deny, but it certainly doesn't say it won't happen. It's just kind of in the middle. And yes, the government might have something to say, but to be fair with you, I'm some concern about this particular case. I mean, yes, she does have the burden. And because she has the burden, that makes it so you can make the arguments you make here. And if it's a tie, the tie goes to the government. But the problem that I have with the whole thing is, and I probably agree that Li and Chen were properly distinguished, but the thing that I have is that this is a troubling case, and I don't have any evidence in this case that says she's wrong. The only thing I got is, I don't know if she's right. And why hasn't the government mediated this case? Now, that's why I'm asking you to go outside the box. It seems to me the government ought to mediate this case. Petitioner and petitioner counsel, you know, given the administrative's policy, can reach out to, I said, any particular point, even after argument, they can reach out. I mean, we've got some good mediators here on the circuit. We love to get involved in trying to help in these kind of cases. Oh, I participate in questions. Especially in this kind of a case, where, I mean, I would love to say the government has all the evidence, but you don't have any. Frankly, if it weren't for the idea that the petitioner has the burden, it would be an easy case to decide for the petitioner. It may be easy anyway, if I stretched a little. So I'm saying to the government, isn't this a good time for you to try to mediate this case? I'm not saying that we wouldn't mediate. I mean, petitioner's counsel could have asked for mediation throughout this entire process. That was always available to her. And she's never done it? As far as I'm concerned, in full disclosure, I'm the arguing attorney, not the briefing attorney. Oh, okay. You're just here to give me the business. You don't know what's happened underneath. So, you know, looking at the docket, I don't see a request for mediation. So I don't, and I wouldn't have participated in the mediation, because I wasn't the briefing attorney. But at any particular point, even after argument is over, petitioner is well within her right to contact ICE to determine whether or not there's something that they can do. I mean, there isn't any, as I understand it, there's no big crime we're dealing with here. It isn't like I'm sending back a big criminal to China and we've got to get him out of the country quick or they're going to commit another crime. I mean, that's the normal situation where the government doesn't want to do something. Here's the problem. And I realize I'm starting to sound like Judge Reinhart here, but nonetheless, it just seems to me this would be a great case for the government to mediate. Well, there are a couple of factual issues in this case. One of the reasons is, and again, I can't speak for ICE at this point. This is nothing that I brought to ICE. But she attempted to enter with a fraudulent document within the Visa Waiver Program. But everybody does. Not everybody does. I understand. I mean, that seems to be a... These are just factual issues that need to be brought to your attention because this isn't the... I mean, a lot of individuals, when they reach whatever border or whatever gateway they enter in, they immediately claim asylum. She attempted to enter with a fraudulent document under the Visa Waiver Program. I don't know whether or not ICE would consider that to be a negative equity with regards to any sort of prosecutorial discretion. It hasn't been brought to my attention, so I can't answer that. Is there anything in your records that indicates whether the government has evaluated this case to determine whether it's appropriate to exercise prosecutorial discretion under the Morton Memo? There's nothing in the record that I established. And the briefing attorney, unfortunately, is... Excuse me. My time. Is that my finished answer? You bet. The briefing attorney, unfortunately, is no longer with the Department. So, you know, I'm only going by the docket. And there's nothing in the docket. There's nothing in the record to indicate this. I mean, perhaps Petitioner's Counsel could shed further light on that. But as far as I'm concerned, I haven't been contacted since I entered my notice. And again, there's nothing to prevent this from going. And again, I can't speak for ICE saying that they would ultimately exercise any sort of discretion given that there are some negative equities within this case. But a lot of really positive equities, too. I think the government ought to go back and look at it again and see whether it's appropriate to exercise prosecutorial discretion in this case. Absolutely, Your Honor. Absolutely. Okay. Thank you. We took you outside of what I know you came to tell us. But you can look at this case and not have your heart reach out just a little bit. I understand, but I had to argue. You did what you did. Okay, Counselor. Your time is gone. It's already over. It went over with when we were here before. So, but you can stand up and answer one question. Okay. If I ordered this to mediation, what would you do? We'd be open for that. Would you be open? Yes. Have you ever requested it before? No. Why didn't you? Well, we didn't think of it. Because normally they're not easy people to talk with. Well, it's an extremely... Not particularly. Not her, yeah. She's good. Yeah, yeah, I understand. Well, okay, I'm glad to hear that. I'm glad to hear your answer. Thank you very much. Thank you, Judge. All right. Case 09-70630, Zao v. Holder is submitted. Counselor, I hope you will go back and talk to the government about my colleague's question as well. All right.
judges: Quist, Smith, Nguyen